UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHRISTOPHER KENT,

    Plaintiff,

v.                                           Case No. 3:24cv526-TKW-HTC

JAMES OGE,
FOOD SERVICE ADMINISTRATOR,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Christopher Kent, a federal prisoner at Pensacola Federal Prison Camp ("Pensacola FPC") proceeding *pro se* and *in forma pauperis*, filed an amended civil rights complaint against James Oge, a former Food Services Administrator with the Federal Bureau of Prisons, alleging Oge violated Kent's Eighth Amendment rights by using excessive force. Doc. 6. As discussed more fully below, the undersigned recommends this case be dismissed *sua sponte* for failing to state a claim because the federal cause of action recognized in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) cannot be extended to cover Kent's claims.

I.  **Legal Standard**

Under the Prison Litigation Reform Act ("PLRA"), when a prisoner seeks relief from government officials or entities, the Court must "before docketing if feasible or, in any event, as soon as practicable after docketing"[1] screen the complaint and dismiss the complaint, or any portion thereof, if it determines it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b); 1915(e)(2)(B). Moreover, the Court may dismiss a claim when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *See Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

A *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney" and should be liberally construed, *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015), but still must include factual allegations that "raise a right to relief above the speculative level." *Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted). Because Kent is proceeding *pro se*, the Court must consider whether a more-carefully-drafted complaint might state a claim upon which relief might be granted. *See, e.g.*,

---

[1] Although the Court initially directed service on Oge, the Court has since determined the case should be dismissed under § 1915. Also, according to the United States, Oge is no longer an employee at the Bureau of Prisons.

*Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132 (11th Cir. 2019). However, leave to file a more-carefully-drafted amended complaint need not be given when it would be "futile," and "'[l]eave to amend is futile when the complaint as amended would still be properly dismissed.'" *Id.* at 1133 (quoting *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)).

## II. Background

The following allegations are taken from Kent's first amended complaint and are accepted as true for purposes of this report:

On December 16, 2023, Kent was working in the prison kitchen at Pensacola FPC when supervisor James Oge "deliberately and forcefully struck [Kent] in the testicle without provocation." Doc. 6 at 5. This caused Kent to have intense pain and injury. *Id.* Kent complained to staff about his severe pain and distress, but staff dismissed his complaints and failed to take any appropriate action to address his injury.

On December 20, 2023, Kent reported to sick call, where a nurse conducted only a minimal and dismissive examination, ignoring his "severe pain, swelling and clear symptoms of a serious condition" and failing to provide appropriate medical care. The next day, he returned to sick call but the doctor, despite discovering blood in his urine, only prescribed Motrin and an antibiotic. On December 21, 2023, Kent was transported to an outside hospital where he was diagnosed with "sepsis,

epididymitis and potential testicular torsion conditions that required urgent intervention." *Id.*

When Kent returned to the prison, and after reporting the incident, he experienced "continuous, coordinated retaliation … designed to discourage [Kent] from pursuing accountability for the harm [Kent] suffered." *Id.* at 6. He was demoted from his kitchen position to an orderly, endured repeated unwarranted searches of his room, harassment over his clothing choices, and trumped-up reprimands. *Id.* Also, he complained to guards and the Warden that the required prison pants caused excruciating pain when they rubbed across his stitches. The guards and Warden took no action, and the Warden merely blamed Kent for not returning to sick call. *Id.*

Eventually, Kent filed a grievance about the incident under the Prison Rape Elimination Act ("PREA"), but Captain Berg dismissed the report insisting it did not qualify as a PREA matter, as did the prison nurse. When the Office of Internal Affairs staff investigated the incident, they downplayed it, implied that Kent should avoid questioning BOP staff, and speculated that his injuries were not really caused by the incident. For several months thereafter, Kent attempted to communicate his need for medical care through repeated emails but was told to report to sick call.

Based on these allegations, Kent sues Oge in his individual and official capacity for violating his Eighth Amendment rights by using excessive force against

him and failing to protect him. *Id.* at 8. He seeks $2.5 million in compensatory damages, $5 million in punitive damages, and any other appropriate relief.[2] *Id.*

## III. Discussion

Since Kent is seeking money damages against a federal employee based on alleged constitutional violations, his claims can only be brought, if at all, under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). For the reasons which follow, however, Kent's claims do not fall within the narrow scope of *Bivens*, and do not support an expansion of *Bivens* to cover them.

When it enacted 42 U.S.C. § 1983, Congress allowed an injured person to sue *state* officials for money damages for violations of his constitutional rights. Congress has never enacted a corresponding statute providing a damages remedy to plaintiffs whose constitutional rights have been violated by a *federal* official. *See Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017). Nevertheless, in *Bivens*, the Supreme Court created for the first time an implied private right of action for damages against

---

[2] Kent also claims that his due process rights under the Fifth Amendment were violated based on delays in receiving medical intervention and that he was retaliated against after reporting the incident. Kent, however, has named only Oge as a defendant and does not allege Oge was involved in delaying his medical treatment or in retaliating against him. Regardless, any attempt to amend the complaint to add additional defendants would be futile because, like Kent's claims against Oge, those claims would also be a new context under *Bivens* for which a remedy has already been provided. *See Egbert v. Boule*, 596 U.S. 482, 494 (2022) (declining to extend *Bivens* to an excessive force claim and retaliation claim against border patrol agents); *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (collecting cases where the Court has declined to create an implied damages remedy); *Andrews v. Miner*, 301 F. Supp. 3d 1128, 1133 (N.D. Ala. 2017) (declining to extend *Bivens* to a First Amendment retaliation claim arising out of use of excessive force because plaintiff had filed an administrative remedy against defendant).

Case No. 3:24cv526-TKW-HTC

federal employees, allowing Bivens to seek money damages based on claims that federal law enforcement agents violated the Fourth Amendment by searching his residence and handcuffing him without a warrant or probable cause. *See Bivens*, 403 U.S. at 397.

In the decade after *Bivens*, the Court expanded its holding to include a Fifth Amendment violation and an Eighth Amendment violation. In *Davis v. Passman*, 442 U.S. 228, 230–31 (1979), the Court allowed a private remedy against a Congressman under the Fifth Amendment for sex discrimination after he fired his secretary because she was a woman. In *Carlson v. Green*, 446 U.S. 14, 16 & n.1, 18 (1980), the Court allowed a claim against federal prison officials under the Eighth Amendment for failing to treat an inmate's asthma, resulting in his death.

Since those decisions, however, the Court has "adopted a far more cautious course before finding implied causes of action." *Ziglar*, 582 U.S. at 132 (declining to extend *Bivens* to prisoners' claim that a warden violated the Fifth Amendment by allowing federal prison guards to abuse the men during their detention). This more "cautious course" has resulted in the courts consistently declining to extend *Bivens* to any new context. As the courts have emphasized - expanding the *Bivens* remedy is now a "'disfavored' judicial activity" and should be avoided "in all but the most unusual circumstances." *Id.* Indeed, as the Eleventh Circuit recently stated, "[j]udging from the Court's decisions in the last four-and-a-half decades, those 'most

unusual circumstances' are as rare as the ivory-billed woodpecker" and "[b]oth the decision and the bird are staring extinction in the face." *Johnson v. Terry*, 119 F.4th 840, 850 (11th Cir. 2024).

To determine whether a *Bivens* remedy applies, courts employ a two-part test. First, the court must ask whether the claim arises in a new context—that is, whether the case is different in a meaningful way from the three previous cases (*Bivens, Davis*, and *Carlson*) that recognized an implied cause of action against an individual federal officer. *Ziglar*, 582 U.S. at 139. "[A] new context arises when there are potential special factors that previous *Bivens* cases did not consider." *Robinson v. Sauls*, 102 F.4th 1337, 1342 (11th Cir. 2024). For example, a new context arises when a case involves a new category of defendants. *Id.* As the Supreme Court has cautioned, "even a modest extension is still an extension." *Ziglar*, 582 U.S. at 147.

Next, the court should determine "if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (quotation marks omitted). If those factors exist, then a *Bivens* remedy is unavailable. Because of "the risk of interfering with the authority of the other branches," the Supreme Court has instructed that this step almost always results in finding such special factors precluding a *Bivens* action. *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020). Courts should decline to allow a remedy if there are any "sound

reasons to think Congress might doubt the efficacy or necessity of a damages remedy." *Ziglar*, 582 at 121-22. "If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *Robinson*, 102 F.4th at 1342–43 (declining to extend *Bivens* to a Fourth Amendment excessive force claim arising out of the USMS operating a joint state and federal taskforce to apprehend fugitives).

Turning to the first step, applying *Bivens* to Oge's excessive force claim would extend *Bivens* into a new context.[3] Although the Court in *Carlson* applied *Bivens* to an Eighth Amendment claim, that claim was based on deliberate indifference to a medical need. The Court "has never expressly held that *Bivens* extends to Eighth Amendment excessive force or unsafe conditions of confinement claims." *Conyers v. Ayers*, 2023 WL 5533504, at *5 (M.D. Fla. July 20, 2023), *report and recommendation adopted*, 2023 WL 5529707 (M.D. Fla. Aug. 28, 2023), *appeal dismissed,* 2023 WL 9900905 (11th Cir. Nov. 24, 2023). Indeed, the official conduct at issue in a deliberate indifference to a medical need claim is different from

---

[3] Although Kent also alleges he was deprived of medical treatment after the use of force– that claim is not against Oge, and, regardless, the Supreme Court has not recognized a *Bivens* claim where the medical care is created by the use of excessive force. *See Conyers*, 2023 WL 5533504, at *5. Similarly, while Kent alleges Oge was deliberately indifferent to him by failing to protect him from injury – that claim simply arises out of Oge's alleged use of excessive force. Regardless, in *Johnson v. Terry*, 119 F.4th 840, 852 (11th Cir. 2024), the Eleventh Circuit declined to extend *Bivens* to claims of deliberate indifference arising out of allegations that defendants failed to protect plaintiff from another inmate attack's as well as to claims of deliberate indifference to a serious medical need after an inmate attack.

Case No. 3:24cv526-TKW-HTC

the conduct at issue in Kent's excessive force claim. *See Tlusty v. Swain*, 5:23-cv-319-MCR-MJF, 2024 WL 2835506, at *3 (N.D. Fla. May 6, 2024) (noting that excessive force claim against prison security guard is a new context because it deals with a different part of prison operations from medical care and collecting cases declining to extend *Bivens* to an Eighth Amendment claim outside of a medical care claim).

Moreover, the Eleventh Circuit recently found, in *Johnson v. Terry*, 119 F.4th 840 (11th Cir. 2024), that a deliberate indifference claim against federal prison officials presented a new *Bivens* context, despite the similarity to *Carlson*, because BOP administrative remedies are now available but were not considered by the *Carlson* Court. The *Johnson* court explained, "As the Court found in *Ziglar*, we find that the context of these claims is different from the context of the claim in *Carlson* because there the Court did not consider whether there were alternative remedies under the current alternative remedy analysis." *Johnson,* 119 F.4th at 857. As in *Johnson*, alternative remedies exist for prisoners in Kent's position besides bringing a *Bivens* action, "namely submission of a grievance form through the BOP administrative remedy program." *Id.* at 858-59 (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)).

Additionally, Kent's injury – testicular damage – is different from the asthma suffered by the plaintiff in *Carlson*, and "even a modest extension is still an

extension." *Ziglar*, 582 U.S. at 147; *Johnson*, 119 F.4th at 859 ("Also relevant is the fact that the injury in this case is different from the one in *Carlson*."). Therefore, Kent's claims against Oge present a new context. *See id.*; *see also Crocker v. USP 1 Coleman*, 2022 WL 272173, at *1 (M.D. Fla. Jan. 6, 2022), *appeal dismissed*, 2022 WL 1299087 (11th Cir. Feb. 18, 2022) (declining to extend *Bivens* to include an Eighth Amendment claim against a federal correctional official for excessive force, finding the nature and scope of the conduct alleged meaningfully different from *Carlson*); *Hill v. Lappin,* 561 F. Supp. 3d 481, 487 (M.D. Pa. June 2, 2021) ("As the dust settles, however, and courts begin to appreciate *Abbasi's* watershed scope, the better-reasoned authority has declined to recognize a *Bivens* remedy for Eighth Amendment conditions-of-confinement and excessive-force claims.").

Because Kent's claims against Oge arise in new contexts, the court must determine whether any special factors would cause the court to hesitate before extending *Bivens* to those new contexts. *Johnson*, 119 F.4th at 859. For the same reasons as in *Johnson*, there are special factors in Kent's case, including the existence of an alternative remedial structure to remedy Kent's harm.

In *Johnson*, the court also considered the existence of the BOP administrative remedy program as a special factor counseling against extending *Bivens*. Specifically, the court stated as follows:

> Here, Congress through the Executive Branch put the BOP administrative remedy program in place to address prisoner grievances,

> including those involving alleged constitutional violations. *See* 28 C.F.R. § 542.10(a) ("The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."); *see also Malesko*, 534 U.S. at 74, 122 S.Ct. 515. In doing so, Congress through the Executive Branch found that remedial process to be appropriate and adequate. We cannot second-guess that judgment and superimpose a *Bivens* remedy on top of the administrative remedy, which would allow prisoners to bypass the grievance process. *See Egbert*, 596 U.S. at 497–98, 142 S.Ct. 1793.

*Johnson*, 119 F.4th at 859–61 (11th Cir. 2024).

Kent has the same BOP administrative remedies available to him as Johnson. Therefore, Congress through the Executive Branch has provided a remedial process that each deems appropriate and adequate. The Court should not second-guess that judgment and superimpose a *Bivens* remedy on top of the administrative remedy. *See Egbert*, 596 U.S. at 497 (declining to apply *Bivens* to Fourth Amendment claim against US Border Patrol agents for using excessive force because "Congress has provided alternative remedies for aggrieved parties in Boule's position that independently foreclose a *Bivens* action here.").

Because applying *Bivens* to Kent's Eighth Amendment claim would be a new context and special factors indicate that Congress, rather than the judiciary, is better able to provide a remedy, this Court should dismiss this action *sua sponte* for failure to state a claim. *See Tlusty*, 2024 WL 2835506 at *5 (dismissing Eighth and Fourteenth Amendment claims for unreasonable search, gender discrimination, and

medical deliberate indifference *sua sponte* at screening because a "*Bivens* remedy is not available").

Accordingly, it is RECOMMENDED:

1.	That this case be DISMISSED WITH PREJUDICE for failure to state a claim pursuant to 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B).

2.	That the clerk be directed to close the file.

At Pensacola, Florida, this 12th day of February, 2025.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.